[No. 30409. Department Two. January 15, 1948.]

*In the Matter of the Voluntary Dissolution of* HENRY MILL & TIMBER COMPANY.

UNITED STATES OF AMERICA, *Appellant*, v. J. G. DICKSON, *as Receiver, Respondent.*[1]

*J. Charles Dennis* and *Guy A. B. Dovell,* for appellant.

*Metzger, Blair, Gardner & Boldt,* for respondent.

JEFFERS, J.—J. G. Dickson was, by an order of the superior court for Pierce county, entered November 9, 1944, appointed receiver of the Henry Mill & Timber Company, a corporation, in a voluntary dissolution proceeding. The United States of America voluntarily became a party to the action by filing therein a claim for damages arising from the alleged breach by the mill company of a construction contract entered into between the United States and the mill company.

The claim was contested by the receiver, and, after a hearing, the trial court, on June 30, 1947, entered an order

[1]Reported in 188 P. (2d) 677.

rejecting and disallowing the claim and every part thereof. The United States filed a notice of appeal from the above order on July 29, 1947, and on the same day counsel for the receiver acknowledged receipt of a copy of such notice. Appellant did not file an appeal bond, or make a deposit of money in lieu thereof, within the time required by Rem. Rev. Stat., § 1721 [P.P.C. § 5-15], or at all.

Respondent, receiver, has moved in this court to dismiss the attempted appeal, because of the failure of appellant to comply with § 1721, *supra,* and Rule of Supreme Court 6 (1), 18 Wn. (2d) 6-a.

This appeal raises but one question, which may be stated as follows: When the United States voluntarily submits itself to the jurisdiction of a superior court of the state of Washington in a civil proceeding, and thereafter and after a hearing such court enters a judgment or appealable order contrary to the contentions made by the United States, and the United States seeks to appeal to this court from such judgment or order, must the United States, in order to perfect such appeal and give this court jurisdiction to hear and determine the appeal, comply with the section and rule hereinbefore referred to, the same as any other litigant?

Rem. Rev. Stat., § 1721, provides:

"An appeal in a civil action or proceeding shall become *ineffectual for any purpose* unless at or before the time when the notice of appeal is given or served, or within five days thereafter, an appeal bond to the adverse party conditioned for the payment of costs and damages as prescribed in section 1722, be filed with the clerk of the superior court, or money in the sum of two hundred dollars be deposited with the clerk in lieu thereof. But no bond or deposit shall be required when the appeal is taken by the *state, or by a county, city, town or school district* thereof, or by a defendant in a criminal action." (Italics ours.)

Rule of Supreme Court 6 provides:

"(1) Bond on appeal or a supersedeas bond must be given when required by Rem. Rev. Stat., §§ 1721, 1722 [P.C. §§ 7295, 7296]."

It will be noticed that the United States is not named among those excepted from the operation of § 1721, *supra.*

■ We have repeatedly held that the giving of an appeal bond as required by the statute is a jurisdictional step in the perfecting of an appeal, and that the failure to give such a bond compels a dismissal of the appeal. We stated in *Public Utility Dist. No. 1 v. Girard,* 198 Wash. 149, 87 P. (2d) 287:

"The record discloses that no appeal bond was given as provided by Rem. Rev. Stat., §§ 1721, 1722 [P.C. §§ 7295, 7296], and Rule VI (1), Rules of the Supreme Court, 193 Wash. 6-a.

"The giving of bond on appeal is jurisdictional [citing cases], and the failure of appellants to give one compels dismissal of the appeal."

In *Evans v. Swisher,* 12 Wn. (2d) 535, 122 P. (2d) 503, after quoting § 1721, *supra,* we stated:

"This statutory requirement is, by reference, reiterated by Rule VI (1), Rules of the Supreme Court, 193 Wash. 6-a.

"In this instance, no bond was filed, nor was any deposit of cash made, by either of the appellants [drainage district and county treasurer]. The requirements of the statute and of the rule are jurisdictional, and a failure to comply with them renders an appeal ineffectual for any purpose and therefore subject to dismissal. *Peddicord v. Lieser,* 5 Wn. (2d) 190, 105 P. (2d) 5.

"The drainage district does not come within any of the exempted classes named in the statute, although there might seem as much reason for excepting such districts from the operation of the statute as for favoring school districts in that way. *But that is a matter for the legislature to determine,* and under the statute as it presently exists the appeal of the drainage district must be dismissed." (Italics ours.)

It may be stated that, while we also dismissed the appeal of the county treasurer, it was not dismissed for the reason that the treasurer had failed to file an appeal bond.

Appellant states in its brief:

"It is the contention of the United States that being a part of the state government it should not be treated as 'any other litigant' when it appears in the maintenance of its

rights in the courts of the land. It does not divest itself of its sovereignty, except in so far as to authorize the state tribunal to pass on its claim. *United States v. Barber, supra* [17 Sergeant & Rawle (Pa.) 348]

"Because there is no statute which by provision or implication supports the proposition that an appeal bond is required in such case of the United States it must be the government's contention that the respondent's motion should be denied."

We find the following statement in 4 C. J. S. 979, § 517:

"Federal statutes, under which the United States, or officers representing the United States, are exempt from the necessity of filing an appeal bond or security for costs in an appeal in a federal court or in the court of appeals in the District of Columbia, do not apply to proceedings in territorial (72) or state (73) courts. Hence the United States, when prosecuting an appeal in a state court, is generally required to file an appeal bond, (74) notwithstanding comity between the state and the United States; (75) but in some states this has been held to be unnecessary. (76)"

Under note No. 72, the case of *U. S. v. Choctaw O. & G. R. Co.,* 3 Okla. 404, 41 Pac. 729, is cited; under note No. 73, the case of *Bryson v. Payne,* 232 S. W. (Tex. Civ. App.) 362, is cited; and under note No. 74 are cited *In re Elkin's Estate,* 36 Ariz. 334, 285 Pac. 281, *State v. United States,* 8 Blackford's (Ind.) 252, and *Bryson v. Payne, supra.* The case of *In re Elkin's Estate, supra,* is also cited under note No. 75.

The only case cited under note No. 76 is the case of *United States v. Barber,* 17 Sergeant & Rawle (Pa.) 348, and this is the case relied upon by appellant to sustain its contention that, as a sovereign power, it should not be classed as "any other litigant," when it appears in the maintenance of its rights in the courts of the land, because there is no statute in this state which, by provision or implication, supports the proposition that an appeal bond is required of the United States in such case.

Before discussing some of the cited cases, we desire to quote the following statement found in 54 Am. Jur. 627, § 116:

"Where the United States, as a suitor, exercises its right

to invoke the jurisdiction of a court of justice, it is subject to the same rules, and is bound by the judgment to the same extent, as a private party litigant. It comes into court as any other suitor; it takes the position of a private suitor so far as to agree by implication at least that justice may be done with regard to the subject matter, so long as public policy or the purpose of Federal statutes is not thwarted."

We refer now to *United States v. Barber, supra,* decided in 1828, cited and mainly relied upon by appellant. This was an action for debt brought by the United States against Robert Barber, in which an award of no cause of action was made by the arbitrator appointed under the act of March 20, 1810. The United States entered an appeal without paying costs or giving any recognizance, and on motion of the defendant, the court below struck the appeal. The opinion states:

"The government of the United States is constituted of state sovereignty set apart for national purposes; and being a part of the government of each of the states respectively, it is not to be treated as a foreign government. It is sovereign in every sense of the word; and we cannot, therefore, compel it to appear in an action, pay costs, or, without its leave, put it on a footing with ordinary suitors. If it were subject to execution, the property of the nation might be taken in satisfaction of a private debt, even by a constable, under the authority of a justice of the peace. Such a power in the judiciary of a state would be destructive of the cardinal objects of the federal compact. But as the nation is provided with a judiciary of its own, *the states may allow it the use of their courts on their own conditions, or interdict it altogether. While the government descends to the level of a suitor, it necessarily divests itself of the attributes of sovereignty, so far as to authorize the tribunal to pass on its claims. Hence, where it sues, it submits itself beforehand to all such rules and regulations as are prescribed in similar cases: and where it thinks proper to appear as a defendant, it necessarily subjects itself to the judgment of the court, although not to execution.*

"It has been held, that the government of the United States is bound to conform to municipal regulations in respect of land which it holds, not as a sovereign, but as an individual. *Commonwealth v. Young,* Journ. Jurisp. 47. *Hence, did an intention to subject the United States to all*

*the provisions of the arbitration act, distinctly appear, we would be bound to enforce it.* But such an intention is by no means clear. The first arbitration act was held to be inapplicable to corporations, for reasons that hold with equal force in respect of all artificial persons; yet, when the legislature undertook to remedy the defect, they went no further than to provide for the use of corporations specifically: consequently, those provisions are not, even on strict rules of construction, applicable to sovereignties, although corporations, because they are of more than equal dignity. But where the intention is at all open to interpretation, the courtesy which prevails even among independent states ought to be decisive. In a system so complicated as ours, conflicts will always ensue from an intemperate use of power. Our national compact is founded in the very spirit of compromise; and to accomplish the paramount objects of the union, it will be essential, in cases of doubtful right, for the depositories of authority, whether state or federal, to abate something of what might otherwise be their legitimate pretensions: else, every collision must end in a convulsion.

"In *Buckwater v. United States,* 11 Serg. & Rawle 193, it was determined, that the arbitration act does not embrace actions on penal statutes; and hence, it might, to say the least, be doubted here, whether the *reference* were not altogether void; in which state of the case, the cause would be still depending [sic] without the appeal. But that point is not before us; and on the question submitted, we are of opinion, that the United States are entitled to appeal, without the affidavit or security required in other cases, and without payment of costs." (Italics ours.)

We have quoted the opinion in full, because of the reliance placed thereon by appellant. We can agree that the argument advanced in the opinion is logical as applied to the facts set out in the opinion, but we cannot agree that the argument there advanced is applicable and controlling in the instant case. As nearly as we can determine, the opinion is based on the ground that it is doubtful if the arbitration statute in question applied to sovereigns (the act in question is not set out in the opinion), and that if it be doubtful as to whether or not the act applied, the doubt should be resolved in favor of the United States. It is admitted in the opinion that, if the provisions of the act

clearly applied, the court would be bound to enforce it; in other words, that the United States would be subject to the judgment of the court the same as any other suitor, although not to execution.

The following cases, in construing territorial and state statutes relative to appeal bonds, have held that the United States, when appearing in those courts, must furnish an appeal bond, the same as other litigants.

*State v. Beackmo,* 8 Blackford's Reports 270, was a case involving the extension of the Wabash and Erie canal, under the act providing for a general system of internal improvements, approved January 27, 1836, to recover damages for injury done to real estate by the construction of the canal through it. An appeal was taken from the award of damages by the arbitrators to the circuit court. The claimant there obtained a verdict for a fraction over seven hundred dollars, and a judgment, payable in canal-scrip, upon the verdict. In so far as the question with which we are here concerned is referred to, we find it answered by one sentence:

"The United States in taking an appeal from an award of damages, made under the improvement act of 1836, must file an appeal-bond."

The case of *United States v. Choctaw, O. & R. Co.,* 3 Okla. 404, 41 Pac. 729, was an action brought to enjoin the construction and operation of a railroad through Indian territory, without the approval of the secretary of the interior. After a hearing, the court entered an order directing the temporary injunction. The cause was taken to the supreme court by petition in error. The railroad company filed a motion in the supreme court to require plaintiffs to make a deposit and give security for costs. This motion was based upon Rule of Practice 2 of the supreme court of the territory of Oklahoma, which provided:

" 'No cause shall be docketed, nor process issued thereon (except in cases wherein the territory or the United States is appellant) until the plaintiff in error or appellant shall pay to the clerk ten dollars advance fees; *nor shall any civil cause be docketed until security for costs shall be given,*

*approved by the clerk of the supreme court, conditioned for the payment of all costs for which the plaintiff in error may be liable.'* " (Italics ours.)

The opinion states:

"The argument admits that in this case no security for costs has been given, as provided by the rule. It is, however, contended by the plaintiff in error that compliance with the rule is not necessary, since this is a suit by the United States, and that the United States is not required to pay costs, or to give the security here required, in order to avail itself of the rights and remedies provided by and within the jurisdiction of this court.

"This contention the plaintiff maintains upon the following sections of the Revised Statutes of the United States, which are a part of the judiciary act passed by congress in 1798, which read as follows: . . . [The statutes are then set out.]"

The opinion continues:

"The sections here recited are a part of the procedure provided by congress for the supreme court and circuit and district courts of the United States, which are provided for under art. 3, § 1, of the constitution of the United States, as follows: . . . [Section is quoted.]

"In providing a mode of procedure for the 'judicial power of the United States, * * * vested in one supreme court, and in such inferior courts as the congress may from time to time ordain and establish,' congress did not provide a code of procedure for the territorial courts. The legislation here stated, does not relate to the territorial courts. . . .

"The prohibition against requiring security from the United States, or from any party acting under the direction aforesaid, is in cases brought up to the supreme court of the United States, or circuit court of the United States. The prohibition is not against bringing up the case by petition in error from the district court of a territory, to the supreme court of a territory. . . .

"There is in force in the Territory of Oklahoma, and relating to appeals on writs of error from a district court of the Territory to this court, no provision under which the United States is *exempted* from the rule of procedure of this court, under which it is provided that

" 'No civil cause shall be docketed until security for costs shall be given,' etc.

"We understand the rule to be that *unless such special exemption is provided for,* if the United States comes voluntarily into the court, it must do so under similar circumstances and upon the same conditions as if it were a private party, unless, indeed, exemption should be conceded to it upon the ground of sovereignty." (Italics ours.)

The opinion then states that any such exemption was not relied upon in the cited case, after which the opinion states:

"If the United States should, in fact, itself, be exempt from the application of the rule of court requiring security for costs, we should yet hold that the relators are themselves the real parties in interest, and that, as such, they would not be entitled to the benefit of the exemption thus provided in behalf of the United States."

While we appreciate that the court in the cited case did not really pass upon the question of whether or not the United States would have been required to comply with the rule had the question been presented on appeal, we have cited the case because of the reasons first advanced by the court for holding in a proper case that the rules of the territorial supreme court relative to security for costs would be applicable to the United States.

In the Arizona case of *In re Elkin's Estate,* 36 Ariz. 334, 285 Pac. 281, decided in 1930, the court discussed all the contentions made by appellants in the instant case. The opinion states:

"The appeal herein was heretofore, upon the motion of appellee, dismissed on the ground that appellant had not filed an appeal bond as required by law. Following the usual practice, no written opinion assigning reasons for the order of dismissal was given.

"The United States attorney for the district of Arizona has filed motion for a rehearing of the motion to dismiss, in which he claims the order of dismissal was erroneous for three reasons. He says: First, that the United States, being the guardian of the appellant who is an Indian, is exempt under section 3673 of the Revised Code of 1928 from giving an appeal bond, and cites the opinion of this court in *Porter v. Hall,* 34 Ariz. 308, 271 Pac. 411, 417, wherein we said: '. . . All Indians are wards of the federal government, and as such are entitled to the care and protection due from

a guardian to his ward.' Second, that a judgment for costs against the United States cannot be collected in this kind of a case. And third, that because of the comity existing between the state of Arizona and the United States no bond on appeal can be exacted of the latter.

"Section 3673 of the Revised Code of 1928 reads as follows:

" 'No bond shall be required upon an appeal taken by the state, or any county thereof, or by a state board or commission, or a state or county officer in his official capacity, or by an executor, administrator, guardian, or trustee in bankruptcy in his representative capacity.'

"It will be noted that the terms of this statute have local application. The first part of it exempts state and counties thereof and officers of these when sued or suing in their representative capacity from giving appeal bonds. No one would contend that any foreign state or county or the officers thereof suing or being sued in our courts could appeal without giving an appeal bond. It is just as certain that the exemption from giving a bond on appeal was intended to extend to executors, administrators, guardians and trustees in bankruptcy appointed and commissioned by the local courts and none other.

"The second ground assigned suggests a very good reason for requiring an appeal bond, the purpose of such bond being to protect the adversary against loss by reason of an unsuccessful appeal.

"The third ground assigned is not good for the reason that the statutes require all appellants to file appeal bonds (section 3664, Revised Code of 1928), except persons financially unable to do so (section 3665, Id.), *and those mentioned in section 3673, supra.* These exemptions we have held are in derogation of the general law *and may not be extended to include cases not within the terms of the exemptions. Town of Yuma v. Winn,* 17 Ariz. 92, 148 Pac. 286.

"We are satisfied the order of dismissal for want of an appeal bond should not be disturbed." (Italics ours.)

In the case of *United States v. Branson,* 147 S. W. (2d) (Tex. Civ. App.) 286, the court of civil appeals of Texas had before it a question similar to that presented in the instant case. The legislature of Texas had passed a statute exempting certain persons and entities from the requirement of filing an appeal bond. Among those were the state

of Texas and others, but the statute did not, either expressly or by implication, exempt the United States from the operation of the statute. The opinion states:

"Appellant [United States] contends that it is not liable for costs in this case, and therefore it is unnecessary for it to file a bond. Without deciding its liability for costs, we hold that *in the absence of a statutory exemption,* an appeal to this court can not be perfected without filing an appeal bond or affidavit in lieu thereof. *Stinnet v. Dudley,* Tex. Civ. App., 277 S. W. 801. Appellant did conform to that part of Art. 2253 which provides for the giving of notice of appeal, but it failed to perfect its appeal by filing a cost bond within the time prescribed by statute. . . .

"Appellant claims that the only purpose of an appeal bond is to secure the opposite party in his costs. This is not correct. *Under our system of practice an appeal bond is a jurisdictional prerequisite to an appeal to this Court, and it may not be dispensed with in the absence of specific statutory authority.* It is as necessary as the giving of notice of appeal, or any other jurisdictional step in our procedure. . . .

"Lastly, appellant contends that it is not subject to the provisions of Arts. 2253 and 2265 because they 'transgress the limits of state power * * * because the United States, relying on its sovereign prerogatives and attributes, that costs could not be awarded against it, did not execute the cost bond provided by Art. 2265.' We overrule this contention. If there be one power left to the State of Texas in this new era of broadened federal authority, it is the sovereign one to set up and require adherence to her own system of practice in state courts. The Legislature of Texas, alone, has authority to prescribe how an appeal can be taken to this Court, and when the United States, having selected the forum by instituting suit in a Texas court, attempts to appeal, it must abide by and conform to the provisions of the Texas statutes, the same as any other litigant. Since the giving of a bond is a prerequisite to an appeal, the United States must give that bond. [Citing cases.] . . .

"The attempted appeal is dismissed. No statutory provision provides that the United States must pay the costs of this proceeding and mandate will issue without payment of costs.

"Appellees' motion to dismiss the appeal is granted." (Italics ours.)

A similar result was reached in the Texas case of *Thomas v. Cowan,* 153 S. W. (2d) (Tex. Civ. App.) 509, decided in 1941.

The Texas case of *Southland Life Ins. Co. v. Barrett,* 172 S. W. (2d) (Tex. Civ. App.) 997, followed the two preceding cases, stating:

"The United States did not file an appeal bond. It was held in *United States v. Branson,* Tex. Civ. App., 147 S. W. (2d) 286, writ of error refused, that it was necessary for the United States to give an appeal bond, as must any other litigant, and the appeal was dismissed for lack of an appeal bond. In view of that holding, and of the act of our Supreme Court in refusing a writ of error, we followed that decision in *Thomas v. Cowan,* 153 S. W. (2d) 509. The appeal of the United States in the present case is, therefore, unavailing."

Appellant cites *Holmes v. Mattoon,* 111 Ill. 27, stating that the decision in this case has supplemented the reasoning in the Pennsylvania case of *United States v. Barber, supra.*

It may be stated here that in neither the *Holmes* case nor in any of those cited by respondent is the *Barber* case referred to.

The question presented in the *Holmes* case was whether or not an act of the legislature, which permitted municipal corporations to appeal without giving an appeal bond as in other cases, was in violation of the constitution, because such act was a special or local legislation.

It seems to be the contention of appellant in the instant case that what was said in the cited case relative to the right of the state, acting in a governmental capacity, and the right of municipal bodies under the patronage and control of the state, when acting to carry out their powers and enforcing public rights, is applicable to the United States when appearing in the state courts. It should be kept in mind that the court was upholding the constitutionality of a state statute, as applied to an agency created by the legislature of the state. We are unable to see that the cited case is helpful here. There is no question but that a sovereign power such as the state can exempt itself and others from

the payment of costs or the furnishing of bonds in its own courts, and that is all the cited case holds.

It may be conceded here that, in so far as this action is concerned, no judgment could be lawfully entered awarding costs against appellant, nor could any execution or attachment be lawfully issued to assist in the collection of any costs.

We have been unable to find in any case cited by appellant a decision holding that the United States, under and by virtue of its sovereign powers, when it voluntarily submits itself to the jurisdiction of the state courts, and when it obtains an adverse judgment therein, can appeal from such judgment to the supreme court without complying with the laws of such state relative to the furnishing of an appeal bond, where the United States is not exempted from giving such bond and where it has been held by the courts of such state that the furnishing of an appeal bond is a jurisdictional prerequisite to such appeal.

We do not feel called upon to approve or endorse, certainly not *in toto*, the reasoning in any of the cases cited by respondent, although they undoubtedly show the trend of more modern authority. However, we do think the Texas court, in the case of *United States v. Branson, supra,* gave a logical reason, and one with which we are in accord, in answer to the following contention of the appellant in that case:

"Appellant claims that the only purpose of an appeal bond is to secure the opposite party in his costs. This is not correct. *Under our system of practice an appeal bond is a jurisdictional prerequisite to an appeal to this Court, and it may not be dispensed with in the absence of specific statutory authority.* It is as necessary as the giving of notice of appeal, or any other jurisdictional step in our procedure." (Italics ours.)

We have held, as did the Texas court, that under our system of practice an appeal bond is a jurisdictional prerequisite to an appeal to this court, and that it may not be dispensed with except by those litigants specifically exempted by the statute.

We appreciate that this court has never been called upon to pass upon the question of whether or not, under circumstances such as appear in this case, the United States must comply with the statute and rule of this state the same as any other litigant. Because of this fact, we have cited and quoted at length from the leading cases bearing on the question presented.

After a consideration of all the cases and the arguments therein advanced, including the arguments on the question of whether or not any public policy would require that the United States be permitted to appeal in this case without complying with the statute and rule, we have concluded that, notwithstanding the fact that no valid judgment for costs could be obtained or enforced against the United States in this action, the furnishing of an appeal bond being a jurisdictional prerequisite to an appeal applicable to all litigants except those specially exempted from so doing, this court is without jurisdiction in the instant case to hear and determine the question raised by the attempted appeal of the United States, and that such appeal must be dismissed.

If the legislature desires to exempt the United States from the operation of the statute and rule, it can, of course, do so, but that is a matter for the legislature to determine.

For the reasons herein assigned, the attempted appeal of the United States must be, and it is, hereby dismissed.

MALLERY, C. J., BEALS, STEINERT, and ROBINSON, JJ., concur.